Ruffin, Chief Justice.
 

 — As no written conveyance was given in evidence by the plaintiff, the title of his lessor depends altogether upon the presumption of one to her ancestor. That presumption, his Honor told the jury, they were at liberty to draw, if they believed from the pos
 
 *180
 
 session of Brooks, and the other circumstances, that he had acquired the title — meaning, as we take it, a deed in fee. To this instruction, as at all proper, or as being so in its particular terms, several objections are taken on the part tjle defendants.
 

 The first is, that in the case proved, no presumption in law or in fact, of a conveyance is allowable, because the lot had been appropriated for a school by law, and the commisioners could not convey it. It certainly takes a case out of the rule of presumption, if the grant to be presumed must necessarily come from a person who had no right to make it for the purposes or to the extent to which it is claimed; or if the subject of the grant cannot by law be granted. As if an easement over land be claimed under a grant presumed after his death to be made by a particular person, and that person turn out to be but tenant for life: or if one take possession and retain it for a long time, of land which a statute forbids to be entered or granted to any. In such cases, a conveyance is not, and cannot be presumed, because it would be presuming a wrong, and because the conveyance, if presumed, would be inoperative. It is insisted, that principle applies here. We think not. The reservation of this particular lot for a schoolhouse was a question of fact, upon which the Court could give no opinion. Admit that after the reservation, it could not be entered by an individual, and therefore that a conveyance to him could not be presumed, yet the Court could not assume that fact, and upon it found an instruction to the jury, that here the presumption did not arise. It was among “ the other circumstances” besides the possession, on which the jury was to pass. If the defendants did not choose to leave its weight to the jury, they ought to have prayed the Court to instruct the jury upon the legal effect of it, if they found it to be a fact that this was thus appropriated. But admitting that to be true, it does not follow that the commissioners might not legally have conveyed it afterwards. The statute designates particular lots, as known in the plan of the town, for a court-house, prison, market and other purposes. Those, undoubtedly, the commissioners could not convey, without an enabling
 
 *181
 
 statute. Eut for a church, and a school, the selection is left to the commissioners themselves. If they had never made one, but had conveyed all the lots to individuals, it would have been a breach of duty, yet the titles would have passed. The argument, however, is, that appropriating particular parcels to those purposes is conclusive; that they could not afterwards select others, nor sell the former. It seems to us otherwise. In the judgment of the commissioners, other situations yet undisposed of, might be more fit, and we see nothing in the statutes to restrain their discretion upon that point, while all the grounds remained unimproved, and no school was established on either. We think they might, to use a common phrase, have changed the location, if the public convenience, in their opinion, would have been promoted by it. If they could, then the appropriation proved, if really made, did not prevent the doctrine of presumption from attaching to the case, in the sense in which we'are now speaking, which is, whether it could be drawn, and not whether it ought. It is no answer to that, that no abandonment of this lot, or selection of another is shown; because the argument depends on this proposition, — that the grant under all circumstances would be void, and therefore cannot be presumed; and it is fully met when it appears that under some supposable circumstances the grant would be good. We think, therefore, that it was not on this ground erroneous, to leave the case to the jury as one, in which a conveyance might be presumed as a fact.
 

 It is again objected, that the instruction was defective, in not stating as a part of the proposition, that the possession on which the presumption arises, must be founded on, and be accompanied by a claim of right in the possessor ; for that here there was no evidence of such claim, but evidence to the contrary.
 

 It is true, that when one enters as tenant to another, or occupies under a claim of right not inconsistent with the title of the true owner, no length of possession will autho-rise a presumption of a deed, as ah arbitrary legal inference. But there was no evidence here of an express
 
 *182
 
 tenancy, but simply a possession. Every possession is taken to be on the possessor’s own title, until the contrary aPPears> as the possession is in itself, the strongest evidence of the claim of title, and, when long continued, of title also. Leaving the possession to the jury, as a ground of presumption, left it as evidence both of the right, and the claim of right; and it cannot be doubted, that the jury must have understood, that to authorise the presumption, they must believe that Brooks occupied and used the ground
 
 as his own.
 
 To establish such claim did require express evidence of it, independent of the possession itself. This might certainly be rebutted by positive or circumstantial evidence that he did not thus claim it, as that he acknowledged the title of the town, or even that he merely occupied, setting up no title in himself, so that his possession was not adverse to the owner, whoever that owner might be. Perhaps there are circumstances here, sufficient to justify those conclusions to a judicial mind: such as that
 
 no
 
 compliance by Brooks of any of the notorious pre-requisites to his getting a title is shown, and therefore he had no right to a deed; and, especially, that during his whole occupation he does not appear to have listed the lot as private property for public or town taxes, or paid them, and it does not seem to have been assessed in any way for taxes more than two of those years, and that as recently as 1805 or 1807, and that may have been without his knowledge or concurrence. If in such a case the Court had laid down the presumption as a conclusion of law, or even
 
 advised
 
 the jury to presume a conveyance, or declared that it could not be inferred, that Brooks Hid not claim the lot as his own, we should have thought it erroneous. But the Court did not lay down any such propositions. On the contrary, the case was left to the jury upon the circumstances merely as evidence to establish the fact of a title, according to their belief of the real fact.
 

 Regarding it in that point of view, the counsel further urged that the judge was bound to explain to the jury the rules of law and reason which might be useful to them in
 
 *183
 
 ascertaining the weight of the circumstances, tending to rebut the presumption, so as to aid the jury in that duty.
 

 We consider it within the province of a judge to give such explanations as to the tendency of evidence, the grounds of its reception, and the inferepees which may be ■ drawn from it, not touching the credit of the witnesses, nor determining its weight as establishing particular inferences. But it is impossible for this Court to correct omissions in the summing up by the Judge who tries a cause, as to this part of his duty, unless the party shall pray particular directions, and the Judge refuse to give them when proper. Whatever we may think of a verdict, this Court cannot order a new trial because it was against evidence; but only order a
 
 venire de novo
 
 for the error of taking a verdict without evidence. Here the case was left to the jury upon the inquiry of fact, whether a deed was made. The long possession and building a house, and the assessment for taxes, even for two years, is evidence, tending to establish that fact. The question depended on its sufficiency, and on the force of the circumstances tending to rebut the presumption. I do not think it proper to go over them, because it might prejudice the parties upon another trial. Whether they tended to rebut, and why they had that tendency, the defendants might have asked of the Court to say, but not having done so, there is no power in this Court to help them. The verdict upon the facts simply, is beyond our control, and the judgment would be necessarily affirmed, if the case depended upon this point alone.
 

 The counsel for the defendants makes another point, upon the rejection of Horton as a witness, on the ground that he was an inhabitant of the town.
 

 It is first denied that he is a corporator, because the charters do not incorporate the town, but only the commissioners, and therefore the witness had no interest. We are inclined to the contrary opinion; for as citizens of" the place many duties are imposed, and immunities conferred, on the inhabitants of chartered towns. But whatever there may be in this, we pass it over, as our decision is made on a different ground.
 

 
 *184
 
 Admitting him to be a corporator, it is contended that he was competent, because he had no private and distinct Personal interest. It is clear, that being merely a corpo-rator will not disqualify a witness. There must be an interest in him, and the charter may be looked through to see if the persons composing the corporation have such an interest. But upon examining the decided cases, it cannot be said to be n settled point in law, that an interest in the constituted authorities of a place, for the benefit and public uses of the whole place, is or is not such a degree of interest in each corporator, as will exclude him. Thus upon a question whether a bond belonged to a corporation, the objection was allowed, that the corporators could not be witnesses. 1 Vern. 254. In
 
 Burton
 
 v.
 
 Hinde,
 
 5 T. R. 174, it was held, that a free man could not prove the title of the corporation to a rent, which was reserved to the use of the whole corporation. On the other hand, in
 
 Rex
 
 v.
 
 Mayor of London,
 
 2 Lev. 230, Shaw, 146, upon a
 
 quo warranto
 
 for taking a toll upon sea coals, the defendants prescribed for the duty, and called free men to support the title; and they were received, because
 
 the
 
 advantage was to the city, and not to the witnesses in particular, and so remote an interest could not produce a bias. In New York it is decided, that an inhabitant of a town, who pays taxes to support the poor, is a competent witness for the overseers of that town, against those of another, relative to the settlement of a pauper, and for a penalty incurred by improperly removing him.
 
 Falls
 
 v.
 
 Belknap,
 
 1 John. Rep. 386;
 
 Bloodgood
 
 v.
 
 Overseers of Jamaica,
 
 12 John. Rep. 285 : and these cases agree with that of
 
 Rex
 
 v.
 
 Netherthong,
 
 1 Maule & Selw. 337. In this state, the citizens of a county are constantly received as;witnesses upon indictments, although the fines imposed belong to their county, and it is liable for the costs if the prosecution fail; and also in suits for county money between the county and its officers. It is so from necessity. In many of the charter acts the authorities are authorised to impose penalties, which are made recoverable before the magistrate of police or other officer, and the town constable may give information, and prove the offence. With rules and deci
 
 *185
 
 sions thus inconsistent, the only resource of the Court would be to refer to principles and convenience for guides. Con-suiting them, it would seem to us, that an interest in the whole community, for the common weal only, is not a particular private interest, which makes the verdict of advantage or disadvantage to each citizen; or if it be, that it is so minute and remote, that the argument of slight bias from it, is repelled by the frequent necessity of using such witnesses, or having none.
 

 But in this particular case even that objection does not apply; because the property here is not for the use of the corporation as a thing of value, and yielding a revenue for the general purposes of the town. This lot is claimed for a school house, or set apart for that purpose, under the act of 1766, on their books, which are made evidence by the act of 1786. It may be leased, but the profits are applicable only to the school. It is, therefore, a foundation of public charity, in which no individual, wherever resident, has an exclusive and particular interest. If the action were on the demise of the commissioners in their corporate character, the persons composing that body would be respectivelycompetentwitnesses foreither side, as the Trustees of the University have often been. They are merely trustees of the charity, and the body politic is the real party, as was held by Lord Kenyon, in
 
 Weller
 
 v.
 
 The Governors of the Foundling Hospital,
 
 Peake’s N. P. Cases, 206, and seems never to have been since doubted. Such must be the nature of school property, of public and not private institution and endowment. Upon this, as a distinct principle, the opinion of the Court is, that the witness ought to have been received, and therefore there must be a
 
 venire de novo.
 

 Per Curiam. Judgment reversed.